UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DAVID G.,

                  **Plaintiff,**

v.                                                        20-CV-302

**COMMISSIONER OF SOCIAL SECURITY,**

                  **Defendant.**

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. Dkt. No. 12. David G. ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for benefits. This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 9, 10. For the following reasons, Plaintiff's motion (Dkt. No. 9) is denied, and the Commissioner's motion (Dkt. No. 10) is granted.

## BACKGROUND

On November 16, 2016, Plaintiff filed for Social Security Income ("SSI") alleging disability beginning on April 2, 2015, due to chronic pancreatitis and pseudocyst status-post surgery, lumbar degenerative disc disease status-post microdiscectomy, cervical degenerative disc disease with stenosis, and diabetes mellitus type II. Tr. at

16, 177-85.[1] Plaintiff's claim was denied at the initial level and he requested review. Tr. at 88-98, 100-02. Administrative Law Judge John Loughlin ("the ALJ") conducted a hearing on October 30, 2018. Tr. at 27-48. Plaintiff, who was represented by counsel, testified as did a vocational expert ("VE"). Tr. at 27-48. On February 26, 2019, the ALJ issued a decision in which he found that Plaintiff was not under a disability as defined by the Act since November 16, 2016, and therefore, was not entitled to benefits. Tr. at 10-22. Plaintiff commenced the current action on March 13, 2020. Dkt. No. 1.

## **LEGAL STANDARD**

**Disability Determination**

The claimant bears the ultimate burden of proving disability throughout the period for which benefits are sought. *See* 20 C.F.R. § 416.912(a); *Schauer v. Schweiker*, 675 F.2d 55, 59 (2d Cir. 1982). The claimant is disabled only if he shows that he is unable to engage in any substantial gainful activity due to any medically determinable physical or mental impairment which has lasted, or can be expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.909; *see Barnhart v. Walton*, 535 U.S. 212, 216-22 (2002).

A disabling physical or mental impairment is an impairment that results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). Congress places the burden upon the claimant to establish disability by

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 8.

2

requiring him to "furnish such medical and other evidence of the existence [of disability] as the Commissioner of Social Security may require." 42 U.S.C. § 1382c(a)(3)(H)(i). The function of deciding whether a person is under a disability within the meaning of the Act belongs to the Commissioner. 20 C.F.R. § 416.927(e)(1); *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997).

The Commissioner has established a five-step sequential evaluation for adjudicating disability claims set forth at 20 C.F.R. § 416.920. Plaintiff has the burden at the first four steps. The Commissioner has the burden at the fifth step of demonstrating that the claimant can perform other work existing in significant numbers in the national economy, but the burden of proving disability is always on the claimant. *See* 20 C.F.R. § 416.920; *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (stating that "[t]he claimant bears the ultimate burden of proving [disability] throughout the period for which benefits are sought") (citation omitted).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003). Substantial evidence is "more than a mere scintilla."

3

*Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (emphasis added and citation omitted). The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position. *See Perez v. Chater*, 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015). Likewise, where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## **DISCUSSION AND ANALYSIS**

**The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process. *Lynch v. Astrue*, No. 07-CV-249-JTC, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 16, 2016, the application date. Tr. at 16. The ALJ concluded at step two that Plaintiff's chronic pancreatitis and pseudocyst status-post surgery, lumbar degenerative disc disease status-post microdiscectomy, cervical degenerative disc disease with stenosis, and diabetes mellitus type II were severe impairments. Tr. at 16. At step three, he concluded that Plaintiff did not have an impairment or combination of impairments which met or equaled the Listings. Tr. at 18.

The ALJ found that Plaintiff retained the RFC to perform light work as defined by 20 C.F.R. § 416.967(b), except he could occasionally kneel, crouch, stoop, crawl, climb stairs and ramps, and climb ladders, but he could never climb ropes or scaffolds, or be exposed to unprotected heights, and he could have only occasional exposure to dust, noxious odors, fumes, and poor ventilation. Tr. at 18-21. At step four, the ALJ relied on the VE in finding that Plaintiff could perform his past relevant work as a Ceramic Machine Operator. Tr. at 21. Thus, the ALJ concluded that Plaintiff had not been under a disability as defined by the Act since November 16, 2016, his application date. Tr. at 21.

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings. Dkt. Nos. 9, 10. Plaintiff argues that the ALJ: (1) improperly credited the opinion of Dr. R. Mohanty, a non-examining source who opined on Plaintiff's functional capacity before his cervical spine function deteriorated; (2) erroneously interpreted the subsequent raw medical data in formulating Plaintiff's physical RFC; and (3) failed to consider whether Plaintiff was eligible for a closed period of benefits due to his lumbar spine impairment. Dkt. No. 9-1, pp. 16-29. The Commissioner counters that the ALJ: (1) properly weighed the medical opinion evidence, including that of Dr. Mohanty; (2) appropriately found that Plaintiff was more limited than Dr. Mohanty opined based on the subsequent medical findings and objective testing; and (3) plainly and properly found that Plaintiff was not under a disability at any time since his filing date, including the closed period cited by Plaintiff. Dkt. No. 10-1, pp. 6-16. Having reviewed the record in its entirety, this Court finds that the ALJ's decision is supported by substantial evidence and free from legal error.

**Dr. R. Mohanty's Opinion**

On February 1, 2017, Dr. Mohanty was retained by the state to prepare a "Disability Determination Explanation" assessing Plaintiff's functional abilities. Tr. at 72-80. Dr. Mohanty reviewed Plaintiff's medical records, including records from examining consulting physician Dr. Samuel Balderman, Erie County Medical Center, Hens Pain Center, and Erie County Medical Center Skilled Nursing Facility. Tr. at 72-80. After reviewing the records, Dr. Mohanty opined that Plaintiff: could sit with normal breaks for a total of 6 hours in an 8-hour work day; could stand and/or walk for about 6 hours in an

6

8-hour work day; could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; was unlimited in his ability to push and/or pull, climb stairs or ramps, balance, kneel, crouch or crawl; but could only occasionally stoop. Tr. at 78-81. Dr. Mohanty found that Plaintiff was not limited to unskilled work and, even given his physical restrictions, was capable of light work. Tr at 81.

Plaintiff subsequently underwent lumbar microdiscectomy on November 17, 2017, which according to his treating physician, Dr. Joseph M. Kowalski, resulted in significant improvement in his lower extremity radicular symptoms. Tr at 434, 457. However, cervical spine X-rays and MRIs taken in 2018 revealed moderate to severe neural foraminal narrowing at C5-6 and C6-7, or a worsening of his cervical spine condition. Tr. at 475, 476.

**The ALJ's Evaluation of the Medical Evidence**

In assessing a claimant's RFC, an ALJ must consider all of the relevant evidence in the case record. 20 C.F.R. §§ 416.945 (a); 416.927 (d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner."). Provided that it is supported by record evidence, an ALJ's RFC determination need not "perfectly correspond" with any of the medical source opinions cited in his or her decision. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order); *Wilson v. Colvin*, No. 6:16-CV-06509-MAT, 2017 WL 2821560, at *5 (W.D.N.Y. June 30, 2017) (stating "the fact that a residual functional capacity assessment does not correspond exactly to a medical expert's opinion in the record

7

does not mean that the residual functional capacity assessment is just made up") (internal citation omitted).

Consistent with this reasoning, the Second Circuit Court of Appeals has affirmed RFC determinations that were not supported by medical opinion evidence, but rather were based on the record as a whole. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 9 (2d Cir. 2017) (holding that even after the ALJ discounted a treating source opinion, remand to secure another medical source statement was not required, where the record contained sufficient evidence from which the ALJ could assess the residual functional capacity, including treating psychiatrist's years' worth of treatment notes and evidence of [claimant's] varied social and recreational activities); *Bliss v. Comm'r of Soc. Sec.*, 406 F. App'x 541, 542 (2d Cir. 2011) ("Although the ALJ has a duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . "the ALJ need not involve medical sources or claimant's counsel in his deliberative process or assessment of the evidence.").

Plaintiff argues that because his cervical spine deteriorated after Dr. Mohanty rendered his opinion, it was therefore stale and could not constitute substantial evidence for the RFC.[2] Dkt. No. 9-1, p. 20. This argument might have been persuasive had the ALJ adopted Dr. Mohanty's opinion wholesale, assigned it significant weight, or

---

[2] Plaintiff also suggests that Dr. Mohanty was not qualified to assess Plaintiff because he is not a back doctor, and did not personally examine Plaintiff. This Court does not agree. "It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *Wilkins v. Comm'r of Soc. Sec.*, No. 1:18-CV-00067, 2019 WL 2500500, at *6 (W.D.N.Y. June 17, 2019).

otherwise failed to cite to other evidence in the record. However, that is not what the ALJ did. Rather, he assigned Dr. Mohanty's opinion only "some" weight, and cited to medical findings and objective evidence that supported some of the doctor's conclusions. Tr. at 20 (citing Tr. at 236 (2014 MRI of the cervical spine showing normal alignment and signal intensity), 402 (medical record noting that Plaintiff had only mild discomfort in December 2016), 404 (record documenting Plaintiff's normal physical exam findings on December 12, 2016), 406 (notation that Plaintiff reported "doing well" in November 2016), 408-09 (record that Plaintiff had a normal physical exam on this same date), 413 (record noting that Plaintiff had tingling but no leg weakness or difficulty walking on September 9, 2016), 424 (record stating that on January 23, 2017, Plaintiff was in no acute distress, had a normal gait and stance, 70% squat, and was able to rise from the chair without difficulty, although he could not walk on heels or toes), 425 (record noting that on the same date, Plaintiff had limited extension, lateral flexion, and rotary movement but full range of motion in other joints), 428 (January 2017 X-ray revealing that Plaintiff had moderate spondylosis at L3-L4 and mild disc space narrowing at L4-L5), 438 (document noting that Plaintiff had normal physical exam findings on July 12, 2017), 446-47 (record noting that Plaintiff had a normal physical exam on January 10, 2018), 457 (record noting that Plaintiff had significant improvement in his lower extremity 3 weeks after microdiscectomy), 498 (record documenting in June 2018 that Plaintiff's shoulder and chest pain had improved, and his major pain over his mid and lower back had "disappeared" since last visit), 499 (record noting that on this same day, Plaintiff had normal exam findings and that "patient has responded well with current pain management), 508 (record noting Plaintiff's largely normal exam findings on April 17, 2018), 523 (July 28, 2018 emergency room record

9

stating "[a]s patient has no alarming symptoms [we] don't believe that advanced imaging is warranted at this time"), 549 (record noting Plaintiff's normal physical exam findings on August 22, 2018)).

At the same time, the ALJ rejected many aspects of Dr. Mohanty's opinion that were not consistent with the record as a whole. For example, Dr. Mohanty opined that Plaintiff had an "unlimited" capacity for climbing ramps, stairs, ladders, ropes, or scaffolds and an "unlimited" capacity for balancing, kneeling, crouching, and crawling, and that he had no environmental limitations. Tr. at 79 80. The ALJ did not agree and instead found that Plaintiff was functionally restricted in each of these areas based on record evidence which post-dated Dr. Mohanty's opinion and showed a worsening of Plaintiff's cervical condition. The ALJ cited to medical records demonstrating that Plaintiff had neck and back pain, decreased range of motion in his neck and back, problems with paresthesia in both his upper and lower extremities, sensory and motor neuropathies, and slightly reduced strength. Tr. at 19 (citing Tr. at 236, 241, 242, 244, 245, 248, 258, 260, 262, 286, 308, 409, 425, 489, 508, 510, 522, 627, 633, 635). He acknowledged that Plaintiff had back surgery and pain injections and that objective evidence showed that he suffered from degenerative cervical disc disease. Tr. at 19 (citing Tr. 452 (March 15, 2018 record noting that Plaintiff had surgery in November of 2017, and that recent X-rays of his cervical spine revealed degenerative disc disease)).

Plaintiff has not met his burden to show that he had greater limitations than those found by the ALJ. As the ALJ noted, Plaintiff had normal exam findings related to his cervical spine, despite degenerative changes. Tr. at 19 (citing Tr. at 425).

The record also shows that Plaintiff resumed normal activities following his lumbar spinal surgery, despite his complaints of pain. Tr. at 19 (citing Tr. at 458).

Based on the record as a whole, this Court finds that it was appropriate for the ALJ to give "some weight" to Dr. Mohanty's 2017 opinion, while also concluding that Plaintiff was more limited than the doctor found due to a degenerative condition which post-dated his opinion. 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). This conclusion was consistent with the ALJ's duty not to assess Plaintiff's residual functional capacity based on any one piece of evidence but rather, based on the record as a whole, which showed that Plaintiff was more limited than Dr. Mohanty found. *Haggins v. Comm'r of Soc. Sec.*, 1:19-CV-00639 EAW, 2020 WL 4390698, at *5 (W.D.N.Y. 2020) (finding no grounds for remand where the ALJ "afforded [p]laintiff the benefit of the doubt" and included additional limitations beyond those opined by the medical source).

Plaintiff clearly disagrees with the ALJ's evaluation of the evidence. However, the substantial evidence standard is so deferential that "there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012). That is, "once an ALJ finds the facts, [a reviewing court] can reject those facts only if a reasonable factfinder ***would have to conclude otherwise***." *Brault*, 683 F.3d at 448 (emphasis added). This case does not present such a situation.

Moreover, to the extent that Plaintiff alleges that the "staleness" of Dr. Mohanty's opinion creates a gap in the record, this Court does not agree. While an ALJ has some responsibility to develop the evidentiary record, additional evidence is not required "when the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (internal quotations omitted); *see also Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999); *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109-10 (2d Cir. 2020).

Here, the record includes sufficient evidence to support a decision on disability. As the ALJ explained in detail, medical findings and objective testing showed that Plaintiff had a number of impairments that were severe enough to preclude any work above the light exertional level. Tr. at 16-21. This included evidence of neck and back pain, decreased range of motion, paresthesia, sensory and motor neuropathies, slightly reduced strength, and a history of spinal surgery and treatment with steroid injections. The ALJ's decision covers the entire record, which shows that while Plaintiff's impairments were severe, they did not preclude all work, including work that Plaintiff used to perform as a Ceramic Machine Operator. Tr. at 16-21.

Plaintiff complains that the ALJ did not mention in his decision the April 2018 MRI scan of his cervical spine. As an initial matter, the ALJ need not discuss every piece of evidence in the record. *See Brault*, 683 F.3d at 448; *see also Sarah C. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1431 (FJS), 2021 WL 1175072, at *7 (N.D.N.Y. Mar. 29, 2021) (stating that "the ALJ is not required to explicitly discuss every piece of

evidence in the record and the fact that she did not specifically cite certain pieces of evidence does not establish that she failed to consider them"). Second, the findings from the April 2018 MRI do not compel a finding that Plaintiff was disabled. Tr. at 475. While the MRI "impression" mentions spinal canal and foraminal narrowing and "partial effacement of the central CSF," it does not state that Plaintiff suffered from neural compression. Tr. at 475. Moreover, when his treating physician's assistant reviewed the MRI, she confirmed there was "no neural compression." Tr. at 449. Accordingly, any error on the ALJ's part in not explicitly mentioning this particular MRI does not constitute reversible error.

**Closed Period of Disability**

Plaintiff argues that, with regard to his lumbar spine impairment, the ALJ should have considered a closed period of disability, one that began on or before November 16, 2016 (the date he filed for SSI) and ended on January 10, 2018. Dkt. No. 9-1, pp. 26-29. Specifically, Plaintiff contends that during this period, his lumbar spine impairment met Listing 1.04 (Disorders of the Spine).

This Court is not persuaded. First, the ALJ clearly considered and rejected the idea that Plaintiff was disabled during the proposed period. In his decision, the ALJ explicitly states Plaintiff "has not been under a disability, as defined by the Social Security Act, since November 16, 2016." This necessarily includes the relevant time frame to which Plaintiff refers. Second, the evidence does not show that Plaintiff was disabled by his lumbar spine impairment before January 2018. To meet Listing 1.04, Plaintiff has to show that he meets *all* of the relevant criteria. 20 C.F.R. §

416.925(c)(3); *Sullivan v. Zebley*, 493 U.S. 521, 529 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria"). Listing 1.04 requires proof that a claimant suffers from a spinal disorder resulting in compromise of a nerve root or the spinal cord, with "[e]vidence of nerve root compression characterized by [1] neuro-anatomic distribution of pain, [2] limitation of motion of the spine, [3] motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, [4] positive straight-leg raising test (sitting and supine)[.]" Plaintiff has failed to meet this burden.

During the time Plaintiff claims he was entitled to a closed period of disability, Plaintiff's motor strength was intact and symmetrical, limited only by pain, and there is no reference to atrophy or sensory or reflex loss. Tr. at 459. For example, in December 2016, he had "normal strength throughout" and no atrophy was noted. Tr. at 404, 409. At a consultative examination in January 2017, Plaintiff had limited range of motion in his lower back, but there was "[n]o sensory deficit noted" and strength was normal with no evidence of atrophy. Tr. at 425. Other treatment notes from this period contain similar findings regarding the lumbar spine. *See, e.g.*, Tr. at 442-43 (no sensory deficits in November 2017), 447 (same in January 2018), 462 (normal strength in September 2017), 468 (normal motor and sensory sensation, normal strength, normal range of motion and normal gait). There are some references to slightly reduced strength during the relevant period, but those findings were not accompanied by sensory or reflex loss in Plaintiff's lumbar spine. Tr. at 241, 245, 249, 259. As such, it cannot be said that Plaintiff met the requirements for Listing 1.04.

This Court finds that the ALJ appropriately considered the issue of Plaintiff's disability over the entire period at issue. Substantial evidence supports the ALJ's conclusion that Plaintiff was not disabled at any time between November 2016, when he filed for SSI, and February 2019, when the ALJ issued his decision.

## **CONCLUSION**

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is hereby DENIED, the Commissioner's motion for judgment on the pleadings (Dkt. No. 10) is GRANTED. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:  Buffalo, New York
        June 23, 2021

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**